UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|
|
MELINDA MAHER,                                         |          Case No. 1:08-cv-212
                                                      |
        Plaintiff,                                    |          HONORABLE PAUL MALONEY
                                                      |
            v.                                        |
                                                      |
INTERNATIONAL PAPER COMPANY, a corporation,           |
and KATE DUTROW, an individual,                       |
                                                      |
        Defendants.                                   |
                                                      |
_____

### OPINION AND ORDER

**Denying the Defendants' First Motion for Summary Judgment;
Finding a Genuine Issue as to Whether the Alleged FMLA Violations Were Willful;
Finding a Genuine Issue as to whether the Plaintiff's Claims are Timely**

Plaintiff Melinda Maher ("Maher") worked for defendant International Paper Company ("IPC") from October 2000 until her termination in March 2006, and the manager of the plant during the relevant period was defendant Kate Dutrow ("Dutrow"). Maher alleges that both IPC and Dutrow (collectively "IPC") violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). IPC filed its first motion for summary judgment, Maher filed an opposition brief, IPC filed a reply brief, and the court held oral argument in January 2009. For the reasons that follow, the court will deny IPC's first motion for summary judgment, finding that there is a genuine issue of fact as to whether IPC's alleged violation of the FMLA was *willful*. If a jury found that IPC

violated the FMLA and did so willfully, Maher would be entitled to a 3-year statute of limitations rather than the FMLA's 2-year limitations period for non-willful violations.[1]

## BACKGROUND

Maher began working for IPC in October 2000.  *See* First Amended Complaint filed April 2, 2008 ("Am Comp") ¶ 9.  At that time, Maher received IPC's written no-fault absenteeism and tardiness policy, under which employees receive "points" when they arrive late, leave early, or take unexcused (non-FMLA) absences.  She signed a document acknowledging her receipt and understanding of the policy.  *See* Defendants' First Motion to Dismiss or for Summary Judgment filed September 19, 2008 ("1ˢᵗ MSJ"), Ex. 2 (IPC Absenteeism and Tardiness Policy) and Ex. 3 (Acknowledgment Form signed by Maher on Oct. 13, 2000).

In March 2005, Maher's father was diagnosed with lung cancer; the cancer was metastatic and affected his brain, rendering him unable to use his legs.  *See* Am Comp ¶ 11.  Maher's parents were still married, but her mother used a walker and was unable to lift, move or dress the father, or do other needed tasks, such as taking him to medical appointments.  Am Comp ¶ 12.  At some unspecified time "[s]hortly after the diagnosis", Maher spoke with plant manager Dutrow and explained that she needed to care for her father, and asked for FMLA paperwork so that she could request intermittent leave for that purpose.  Am Comp ¶¶ 13-14.  Dutrow refused to give Maher the

---

[1]

On February 2, 2009, IPC filed its second motion for summary judgment [document #58, brief #59].  With an jointly stipulated extension of time, Maher timely filed an opposition brief on March 6, 2009 [document #64].  The court awaits IPC's reply brief and will decide whether to hear oral argument again.

A settlement conference is scheduled before the Magistrate Judge on April 23, 2009 [document #63].

paperwork, telling her that she ineligible for FMLA leave because her parents were married and living together.  Maher initially accepted Dutrow's statement as true.  Am Comp ¶¶ 15-16.

IPC soon began assessing "points" against Maher, under its no-fault attendance system, when she was absent from work in order to care for her father.  When Maher complained to an IPC Human Resources ("HR") representative about Dutrow's refusal to provide FMLA forms and the assessment of points, the HR representative merely shrugged his shoulders and said nothing.  Am Comp ¶ 17. Maher then requested FMLA leave; in response, IPC did not ask her to certify her father's or her medical condition, and it neither approved nor denied the request.  Am Comp ¶¶ 18-19.  (Maher contends that IPC should not have needed to request certification in any event, because there was no reasonable basis to doubt that her father's condition was serious.  Am Comp ¶ 20).

On September 28, 2005, Maher called Dutrow and said that she would be a few hours late because she needed to take her father to the doctor, and asked if the missed hours could be excused or made up later.  Saying that Maher would not receive special treatment, Dutrow assessed a point against Maher under the attendance system.  Am Comp ¶¶ 21-23.  On the night of October 25 and the morning of October 26, 2005, corresponding with the start of Maher's third shift, her father had a bad night and was deteriorating, and she stayed with her parents to care for him and prepare him to go to the hospital.  Because of Maher's emotional condition, she did not feel prepared to go to work, but she arrived at work, albeit late, after calling to explain she would be late.  Dutrow refused to excuse the lateness and assessed another point against Maher under the attendance policy.  Am Comp ¶¶ 24-27.  Because Dutrow feared losing her job, she left her father to be transported to the hospital alone by ambulance, instead of riding with him or driving him herself.  He died three days later, on October 29, 2005.  Am Comp ¶¶ 28-29.

On March 10, 2006, Maher, who was pregnant, had a miscarriage.  She missed several days of work due to the miscarriage, and informed IPC of the reason for the absences, yet IPC assessed at least one point against her attendance record.  Am Comp ¶¶ 30-31.  When Maher returned to work, she heard that IPC planned to fire her, so she went to Dutrow's office to verify what her co-workers had said.  Dutrow allegedly said something to the effect of "I am going to fire you, but for now you have a job to do so go out there and do a good job and we will let you know when you are going to be fired."  Am Comp ¶ 33.  Several days later, on March 17, 2006, IPC terminated Maher, claiming that she had exceeded the number of points allowed under its no-fault attendance policy.  Am Comp ¶ 32 and Maher Dep 125 & 127.

Maher filed the complaint on March 3, 2008.  Maher alleges that if IPC had properly excused the absences related to her father's care and her miscarriage as FMLA absences, she would not have exceeded the number of points allowed under the no-fault attendance policy and would not have been terminated.  Am Comp ¶¶ 34-35.  Specifically, Maher alleges that the defendants wilfully and in bad faith improperly informed her of her FMLA rights, Am Comp ¶¶ 38 and 43-44; willfully and in bad faith interfered with and denied her FMLA rights, Am Comp ¶¶ 39-40 and 43-44; and willfully and in bad faith terminated her in retaliation for attempting to exercise her FMLA rights, Am Comp ¶¶ 41-44.  Maher seeks compensatory damages for lost wages and benefits, and for past and future non-economic damages; equitable relief including an award of front pay; interest; and attorneys fees and costs.  *See* Prayer for Relief following Am Comp ¶45.

## LEGAL STANDARD: SUMMARY JUDGMENT

Summary judgment is proper if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.'" *Appalachian Railcar Servs., Inc. v. Consumers Energy Co.*, – F. Supp.2d –, 2008 WL 828112, *13 (W.D. Mich. Mar. 25, 2008) (Maloney, J.) ("ARS") (quoting *Conley v. City of Findlay*, 266 F. App'x 400, 405 (6th Cir. 2008) (Griffin, J.) (quoting FED. R. CIV. P. 56©). The court is not to weigh the evidence or decide the truth of the matter. *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council*, – F.3d –, –, 2008 WL 2699923, *5 (6th Cir. 2008) (citing *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 551 (6th Cir. 2004)).

The movant has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 266 F. App'x at 404 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, the movant "need not support its motion with affidavits or other materials 'negating' the opponent's claim"; rather, the movant's initial burden is only to "point out to the district court that there is an absence of evidence to support the nonmoving party's case . . . ." *Wilson v. Continental Dev. Co.*, 112 F. Supp.2d 648, 654 (W.D. Mich. 1999) (Bell, J.) (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)), *aff'd o.b.*, 234 F.3d 1271, 2000 WL 1679477 (6th Cir. Nov. 2, 2000).

Once the movant has met its burden, the non-movant must present "significant probative evidence" to demonstrate that there is more than "some metaphysical doubt as to the material facts." *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 266 F. App'x at 404 (quoting *Moore*, 8 F.3d at 339-40)). The non-movant may not rest on the mere allegations of his pleadings. *Wilson*, 112 F. Supp.2d at 654 (citing FED. R. CIV. P. 56(e) and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)). Moreover, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; there be some genuine

issue of *material* fact.  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 2008 WL 227331 at *3 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))).

The court must accept the non-movant's factual allegations, *ACLU v. NSA*, 493 F.3d 644, 691 (6th Cir. 2007) (concurrence) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *cert. denied*, – U.S. –, 76 U.S.L.W. 3436 & 3438, 2008 WL 423556 (2008), and view the evidence in the light most favorable to the non-movant, giving it the benefit of all reasonable inferences.  *Fox v. Eagle Dist. Co., Inc.*, 510 F.3d 587, 592 (6th Cir. 2007) (Richard Allen Griffin, J.).

Ultimately, "summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party w[ould] bear the burden of proof at trial.'"  *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 447 (6th Cir. 2007) (quoting *Celotex*, 477 U.S. at 322)).[2]  As former Chief Judge Robert Holmes Bell aptly characterized the post-trilogy summary-judgment standard, "[w]hile preserving the constitutional right of civil litigants to a trial on meritorious claims, *the courts are now vigilant to weed out* fanciful, malicious, and *unsupported claims before trial*."  *Wilson*, 112 F. Supp.2d at 654 (emphasis added); *see also Koubaitary v.*

---

[2]

A trilogy of 1986 Supreme Court decisions "made clear that, contrary to some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances . . . ."  *Collins v. Assoc'd Pathologists, Ltd.*, 844 F.2d 473, 475-76 (7th Cir. 1988). *Accord In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003) (the trilogy "encourage the use of summary judgment as a means to dispose of factually unsupported claims."); *Hurst v. Union Pacific Rail Co.*, 1991 WL 329588, *1 (W.D. Okla. Feb. 6, 1991) ("This trilogy of cases establishes that factual and credibility conflicts are not necessarily enough to preclude summary judgment and encourage that a summary judgment be used to pierce the pleadings and determine if there is in actuality a genuine triable issue."), *aff'd*, 958 F.2d 1002 (10th Cir. 1992); *Bowser v. McDonald's Corp.*, 715 F. Supp. 839, 840 (S.D. Tex. 1989) (the trilogy "encouraged federal district courts to use summary judgment more frequently and economically by changing the movant's burden of production . . . and by allowing qualitative review of evidence") (citations omitted).

*Parker-Hannifin Hydraulic Sys. Div.*, 2008 WL 2758460, *1 (W.D. Mich. June 27, 2008) (Scoville, M.J.); *Townsend v. US*, 2000 WL 1616081, *1 (W.D. Mich. Aug. 31, 2000) (McKeague, J.)

### DISCUSSION
### Are Maher's Claims Time-Barred?

FMLA Statute of Limitations. Generally, an FMLA claim must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). If the claim alleges a *willful* violation of the FMLA, however, the claim may be brought "within 3 years of the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(2).

Framing the Limitations Issue. Maher filed the original complaint on March 3, 2008. That was less than two years after two of the adverse actions taken by IPC: the March 10, 2006 absenteeism point assessment and the March 17, 2006 termination (which IPC justified by claiming that Maher had exceeded the number of points allowed under its no-fault attendance policy), Am Comp ¶ 32 and Maher Dep 125 & 127. But Maher filed the original complaint more than two years after all four other allegedly-unlawful actions by IPC: Dutrow's alleged refusal to provide FMLA paperwork for Maher's September 28, 2005 absence; Dutrow's alleged incorrect and/or incomplete and/or misleading explanation of FMLA rights and procedures; the September 28, 2005 absenteeism "point" assessment; and the October 26, 2005 absenteeism point assessment.

In contrast, all six alleged FMLA violations occurred less than *three* years before Maher filed the complaint, i.e., after March 2, 2005.

Thus, if the two-year limitations period for non-willful violations applies, Maher's claims will be untimely except as to the March 10, 2006 absenteeism point assessment and the March 17,

2006 termination. *See Sosby v. Miller Brewing Co.*, 415 F. Supp.2d 809 (S.D. Ohio 2005), *judgment aff'd*, 211 F. App'x 382 (6th Cir. 2006) (Keith, McKeague, <u>D.J. Cleland</u>):

> Sosby identifies a number of events to support her claim that Miller interfered with her FMLA rights. Sosby alleges that Miller did so by (1) refusing to recognize that her March 2000 leave was appropriate medical leave under the FMLA; (2) misrepresenting to the Department of Labor Sosby's medical condition to undermine her credibility and jeopardize her FMLA claim; (3) claiming that Sosby lied about her injuries to go on vacation with family members because she did not have any vacation time left, which constitutes workers' compensation fraud, to undermine her credibility and jeopardize her FMLA claim; (4) failing to cover the cost of her FMLA-qualified podiatrist care; and (5) conducting the May 6, 2000 surveillance, without probable cause, to stalk her and threaten her with prosecution for workers' compensation fraud in retaliation for her two-week medical leave and her FMLA complaint. * * * *Sosby filed her complaint on October 9, 2002 . exactly two years after her termination. Because each allegedly improper act mentioned above occurred prior to Sosby's termination, these FMLA claims are time-barred.*
>
> Under the two-year statute of limitations for FMLA claims, Sosby's termination is the only timely event that she raises . . . .

*Sosby*, 211 F. App'x at 389 (emphasis added, footnote 5 omitted). By contrast, if the *three*-year limitations period for *willful* violations applies, Maher's claims will be timely as to all alleged violations.

To determine which limitations period applies, the court must determine whether Maher has shown a genuine issue of material fact as to whether IPC's alleged violation of the FMLA was *willful*. *Cf. Williams v. Northwest Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002) (p.c.) (Kennedy, Gilman, S.D. Ohio D.J. Sargus) ("Because Williams' claim accrued in January 1999 . . . it is time-barred by the FMLA's general two-year statute of limitations except to the extent that Williams can show a 'willful' violation."). **The court determines that Maher has shown a genuine issue of material fact as to whether the alleged violations of the FMLA were willful.** A reasonable jury could find that the alleged violations were willful, and, if the jury did so find, the

court would then be obligated to apply the three-year limitations period.

    <u>The Parties' Positions</u>.  IPC relies heavily on *Ledbetter v. Goodyear Tire & Rubber Co.*, – U.S. –, 127 S.Ct. 2162 (2007), where a female retiree sued under Title VII and the Equal Pay Act, alleging that adverse performance reviews motivated by sex discrimination earlier in her career led her to receive lower pay than her male counterparts through the end of her career (which spanned from 1979 to 1998).  *Ledbetter*, – U.S. at –, 127 S.Ct. at 2165.  The Supreme Court granted *certiorari* on the following question:

> Whether and under what circumstances a plaintiff may bring an action under Title VII of the Civil Rights Act of 1964 alleging illegal pay discrimination when the disparate pay is received during the statutory limitations period, but is the result of intentionally discriminatory pay decisions that occurred outside the limitations period.

*Ledbetter*, – U.S. at –, 127 S.Ct. at 2166.  The Supreme Court rejected Ledbetter's attempt to focus the limitations analysis on the later, lower paychecks rather than on the earlier, allegedly discriminatory evaluations which led to those paychecks being lower.  The Court wrote as follows:

> In addressing the issue whether an EEOC charge was filed on time, we have stressed the need to identify with care the specific employment practice that is at issue. *Morgan*, 536 U.S., at 110-11 . . . .  Ledbetter points to two different employment practices as possible candidates.  Primarily, she urges us to focus on the paycheck that were issued to her during the EEOC charging period (the 180-day period preceding the filing of her EEOC questionnaire), each of which, she contends, was a separate act of discrimination.  Alternatively, Ledbetter directs us to the 1998 decision denying her a raise, and she argues that this decision was "unlawful because it carried forward intentionally discriminatory disparities from prior years."  Both of these arguments fail because they would require us in effect to jettison the defining element of the legal claim on which her Title VII recovery was based.
>
> Ledbetter asserted disparate intent, the central element of which is discriminatory intent. [citations omitted] However, Ledbetter does not assert that the relevant Goodyear decisionmakers acted with actual discriminatory intent either when they issued her checks during the EEOC charging period or when they denied her a raise in 1998.  Rather, she argues that the paychecks were unlawful because they would have been larger if she had been evaluated in a nondiscriminatory manner *prior* to

the EEOC charging period.

Similarly, she maintains that the 1998 decision was unlawful because it "carried forward" the effects of prior, uncharged discrimination decisions.  In essence, she suggests that is sufficient that discriminatory acts that occurred prior to the charging period had continuing effects during that period.  This argument is squarely foreclosed by our precedents.

\* \* \*

Our most decision in this area confirms this understanding.  In *Morgan*, we explained that the statutory term "employment practice" generally refers to "a discrete act or single 'occurrence'" that takes place at a particular point in time.  536 U.S., at 110-11 . . . . [W]e held that a Title VII plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."  *Id.* at 114 . . . .

The instruction provided by *Evans*, *Ricks*, *Lorance*, and *Morgan* is clear.  The EEOC charging period is triggered when a discrete unlawful practice takes place.  A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination.

*Ledbetter*, – U.S. at –, 127 S.Ct. at 2166-69 (citations to briefs omitted).  In other words, "[a]lthough a series of discrete acts at times appears to form a pattern or practice that warrants unified treatment, . . . this is generally not permitted under the statutory text of title VII."  *Cole v. Taber*, – F. Supp.2d –, –, 2008 WL 4964312, \*7 (W.D. Tenn. July 9, 2008) (citing *Ledbetter*, 550 U.S. 618, 127 S.Ct. at 2166-72, and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002)).[3]

*See, e.g., Vaughn v. Louisville Water Co.*, – F. App'x –, –, 2008 WL 4997487, \*5 (6th Cir. 2008) (Kennedy, Sutton, <u>McKeague</u>) (affirming summary judgment for defendant-employer on ground that Title VII disparate-treatment, hostile work environment, and retaliation claims were time-barred) ("A pay-setting decision is a discrete act and the period for filing an EEOC charge

---

[3]

See also the decisions on which *Ledbetter* relied:
*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977);
*Delaware State College v. Ricks*, 449 U.S. 250 (1980);
*Lorance v. AT&T Techs., Inc.*, 490 U.S. 900 (1989).

begins when the act occurs.  *Ledbetter* . . . , 127 S.Ct. [at] 2165 . . . .  Accordingly, Vaughn's claims that she did not receive the Survey and Easements process owner position in 1996, was paid less than Eiler as a result of his promotion, and did not receive the same overtime pay as other exempt male employees, are time-barred because they occurred more than 300 days before Vaughn filed her EEOC charge.").

　　　　*Ledbetter* **was interpreting Title VII, of course, not the FMLA**.  Maher has not pointed in her brief to any material differences in the language of the two statutes – or our precedents – that would counsel against applying *Ledbetter*'s reasoning to limitations questions under the FMLA as well.  Namely, the FMLA's limitations provision requires claims for non-willful or willful violations to be brought not later than 2 years or 3years, respectively, "*after the date of the last event constituting the alleged violation for which the action is brought.*"  29 U.S.C. § 2617(c)(1) and (c)(2) (emphasis added).  Title VII's administrative-exhaustion period, by comparison, requires that a Charge of Alleged Discrimination be filed with the federal or state equal-employment opportunity commission "within one hundred eighty days *after the alleged unlawful employment practice occurred* . . . ."  42 U.S.C. § 2000e-5(e)(1) (emphasis added).  **Maher's counsel pressed this issue at oral argument, but for two reasons the attempt is of no avail.**

　　　　**First, this court will not consider an argument that is raised for the first time at oral argument.**  Maher could and should have made the argument (based on differences in the text of Title VII and the FMLA) in her opposition brief (or by obtaining leave of court to file a sur-reply brief that raised the issue).  By failing to do so, Maher waived the argument.  *See Roberts v. Principi*, 283 F. App'x 325, 332 n.3 (6th Cir. 2008) (McKeague, J.) ("Because counsel raised the issue only at oral argument, however, we decline to review it.") (citing *Vaughn v. Lawrenceburg*

-11-

*Power Sys.*, 269 F.2d 703, 714 (6th Cir. 2001)), *cert. denied*, – U.S. –, – S.Ct. –, 2008 WL 4763056 (2008); *Lane v. LaFollette, Tenn.*, 490 F.3d 410, 420 (6th Cir. 2007) ("For the first time at oral argument, Defendants argued that . . . . Defendants . . . have waived this argument by not including it in their brief.") (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)).[4]

**Second, the court is unconvinced that the rather less-than-striking difference in the Title VII and FMLA limitations provisions warrant distinguishing *Ledbetter* and discarding its otherwise sound reasoning.** For this purpose, the court does not perceive any great difference between the FMLA's "last event constituting the alleged violation for which the action is brought", 29 U.S.C. § 2617(c)(1) and (c)(2), and Title VII's "alleged unlawful employment practice." For one thing, when Title VII mentions the "alleged unlawful employment practice", it is necessarily implicitly referring to the "alleged unlawful employment practice for which the action is brought." The phrase would not make sense otherwise. So FMLA refers to the "the last event constituting the alleged violation for which the action is brought", while Title VII refers to "the alleged unlawful employment practice for which the action is brought." Maher's brief identifies no decisions holding

---

[4]

    *See also US v. Graham*, 484 F.3d 413, 418 (6th Cir. 2007) ("Because prosecutorial misconduct was never raised or argued in his briefs to this court, Graham has abandoned this issue . . . .") (citing *US v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006)), *cert. denied*, – U.S. –, 128 S.Ct. 1703, *and cert. denied sub nom. Dresbach v. US*, – U.S. –, 128 S.Ct. 1704 (2008);

    *Probst v. Cent. Ohio Youth Ctr.*, 511 F. Supp.2d 862, 871 (S.D. Ohio 2007) ("It is well established that a moving party may not raise an issue for the first time in its reply brief or at oral argument.") (citing, *inter alia*, *In re FirstEnergy Corp. Sec. Lit.*, 316 F. Supp.2d 581, 599 (N.D. Ohio 2004));

    *US v. Bowen*, 194 F. App'x 393, 401 n.2 (6th Cir. 2006) (Daughtrey, Cook, <u>Chief D.J. Collier</u>) ("This argument was waived by Bowen's failure to raise it at any time before oral argument.") (citing *US v. Bender*, 265 F.3d 464, 475 (6th Cir. 2001)), *cert. denied sub nom. Hall v. US*, – U.S. –, 127 S.Ct. 3055 (2007).

that by referring to "the last event constituting the alleged violation", Congress and the President intended FMLA claims to be subject to a fundamentally different accrual rule than Title VII claims.

Consistent with this thinking, a fellow district court recently applied *Ledbetter* to determine when claims under the federal Americans with Disabilities Act ("ADA") accrued. *See Kesler v. Barris, Sott, Denn & Driker, PLLC*, 2008 WL 1766667, *18 (E.D. Mich. Apr. 17, 2008) (Gadola, J.) (holding that all ADA claims were time-barred except claim as to ultimate termination).

Such persuasive authority might be distinguishable on the ground that the ADA, unlike the FMLA, does not directly adopt Title VII's administrative-filing timeliness requirements. *See Kessler*, 2008 WL 1766667 at *18 ("The ADA incorporates the administrative filing requirements of the Title VII of the Civil Rights Act.") (citing ADA's 42 U.S.C. § 12117(a) and Title VII's 42 U.S.C. §§ 2000e-5(e)(1) and 2000e-5(f)(1)).  But a Sixth Circuit panel recently applied *Ledbetter* to determine the accrual of claims under the Fair Debt Collection Practices Act ("FDCPA"), which does not incorporate Title VII's framework. *See Purnell v. Arrow Fin. Servs., LLC*, – F. App'x –, –, 2008 WL 5235827, *4 (6th Cir. 2008) (p.c.) (Guy, Griffin, D.J. Watson) (affirming in part & reversing in part the dismissal of FDCPA claims as time-barred, and remanding) ("As the decision in *Ledbetter* makes clear, the violation must occur within the limitations period, not just be the later effects of an earlier time-barred violation.") (citing *Ledbetter*, – U.S. at –, 127 S.Ct. at 2169).


**Following *Ledbetter*'s sound reasoning, the court concludes that, as a matter of law, the FMLA limitations period began to run for each denial of FMLA leave (and consequent contemporaneous assessment of a "point" under the absenteeism policy) at the time that IPC**

made the particular denial and assessment.[5]  In other words, the FMLA limitations period began

---

[5]

   **The Lilly Ledbetter Fair Pay Restoration Act of 2009 Overrules *Ledbetter* for Some Claims.**  H.R. 11 passed the House on January 9, identical S. 181 passed the Senate on January 22, and the President signed the bill on January 28, 2009.  *See* Susan Davis, "The Washington Wire", T H E   W A L L   S T R E E T   J O U R N A L   O N L I N E ,  at http://blogs.wsj.com/washwire/2009/01/29/presidents-first-law-obama-signs-lilly-ledbetter-wage -bill.  In any event, the law does not change the *Ledbetter* accrual/limitations rule for FMLA claims. As the Senate bill's proponents explained:

> S. 181 would apply retroactively to May 28, 2007 -- the day before the *Ledbetter* decision -- *for all claims of pay discrimination made under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, Title I and Section 503 of the Americans with Disabilities Act of 1990, and Sections 501 and 504 of the Rehabilitation Act of 1973* that are pending on or after that date.

http://dpc.senate.gov/dpc-new.cfm?doc_name=lb-111-1-4, section entitled "Legislative History" (emphasis added).  Likewise, H.R. 11 did not amend the FMLA.  *See* http://www.govtrack.us/congress/billtext.xpd?bill=h111-11 (§ 1 Title, § 2 Findings, § 3 amends Title VII, § 4 amends the ADEA, § 5 amends the ADA and the Rehabilitation Act of 1973, and § 6 calls for retroactive application to claims under those statutes that were pending on May 28, 2007); *Gilmore v. Macy's Retail Holdings*, 2009 WL 305045, *2-3 (D.N.J. Feb. 9, 2009) (describing scope of Act) (quoting H.R. REP. 110-237, reprinted at 2007 WL 2074846, at 19 (110th Cong., 1st Sess. July 18, 2007)).

   *See, e.g., Leach v. Baylor College of Medicine*, 2009 WL 385450 (S.D. Tex. Feb. 17, 2009), where U.S. District Judge Lee Rosenthal recently noted that the Act amends only Title VII, the ADEA, the ADA, and the Rehab Act of 1973, and then only with respect to claims of compensation discrimination.  Judge Rosenthal explains:

> The Fair Pay Act of 2009 only affects the *Ledbetter* decision with respect to the timeliness of discriminatory compensation claims.  The more general rule announced in *Ledbetter* – that the charging period is triggered when a discrete unlawful practice takes place – reaffirmed the principles in *Ricks*, 449 U.S. at 258, and *Morgan*, 536 U.S. at 115 [and survives the enactment of the Act].

*Leach*, 2009 WL 385450 at *17.  Even after enactment of the Act,

> [c]ourts have applied this rule, as well as the rule that a plaintiff may not sue for a prior discriminatory act outside the charging period, to other types of discrimination not involving compensation. [citations to 7th and 11th Circuits omitted]  The rule set out in *Ledbetter* and prior cases – that "current effects alone cannot breathe new life into prior uncharged discrimination"' – is still binding law for Title VII disparate

to run as to the September 28, 2005 refusal to provide paperwork, FMLA denial, and "point" assessment as soon as those decisions were rendered, on or very shortly after September 28, 2005. Likewise, the FMLA limitations period began to run as to the October 26, 2005 FMLA denial and "point" assessment as soon as those decisions were rendered, on or very shortly after October 26, 2005. Finally, the FMLA limitations period began to run as to the March 10, 2006 FMLA denial and "point" assessment as soon as those decisions were rendered, on or very shortly after March 10, 2006.

Using the two-year limitations period for non-willful violations, all of Maher's claims would be untimely except for her claim regarding the March 10, 2006 absenteeism point assessment and the March 17, 2006 termination (she filed the complaint on March 3, 2006). Using the three-year limitations period for willful violations, however, all of Maher's claims would be timely. Accordingly, it is necessary to determine whether a reasonable factfinder could find that IPC not only violated, but *willfully* violated, the FMLA.

<u>Has Maher Shown a Genuine Issue as to Whether IPC *Willfully* Violated the FMLA?</u>

---

treatment cases involving discrete acts other than pay.

*Id. Accord Vuong v. NY Life Ins. Co.*, 2009 WL 306391, *8 (S.D.N.Y. Feb. 6, 2009) (Thomas Griesa, J.) ("The issue of when the unlawful employment practice occurs *with regard to compensation* is the subject of legislation, which became effective only a few days ago . . . .") (emphasis added).

Likewise, the Act does not overrule *Ledbetter* with respect to FMLA claims, so it does not affect the court's analysis of whether Maher's FMLA claims are timely. *Ledbetter* remains persuasive authority except where overruled by statute, and this court finds its reasoning cogent and appropriate for application in the FMLA context. *See, e.g., Charnley v. Boeing Co.*, 2009 WL 279030, *1-2 (W.D. Wash. Feb. 5, 2009) (Robert Lasnik, J.) (after enactment of Fair Pay Act of 2009, district court continued to apply *Ledbetter* accrual rule to FMLA claim, holding that claims were untimely as to discrete adverse acts that occurred more than two years before the filing of the complaint).

For purposes of FMLA's 3-year limitations provision for willful violations, 29 U.S.C. §

2617(c)(2), the plaintiff must show that the employer "act[ed] with knowledge that its conduct is

prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*,

377 F.3d 599, 603 (6th Cir. 2004). As our Circuit explained in *Hoffman v. Professional Med Team*,

394 F.3d 414 (6th Cir. 2005),

> the standard for willfulness under the FMLA extended statute of limitations is
> whether the employer intentionally or recklessly violated the FMLA. The Supreme
> Court has so interpreted the term "willful" in the double damages provision of the
> Age Discrimination in Employment Act ("ADEA"), *Trans World Airlines, Inc. v.
> Thurston*, 469 U.S. 111, 128-29 . . . (1985), and in the more closely analogous
> statute-of-limitations provision of the Fair Labor Standards Act ("FLSA").
> *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 . . . (1988). We have
> accordingly applied the same interpretation to the FMLA in a well-reasoned . . .
> opinion.

*Id.* at 417-18 (citing *Williams v. Schuller Int'l, Inc.*, 29 F. App'x 306 (6th Cir.2002) (Jones, <u>Nelson</u>,

Daughtrey)). However, the court is mindful that "'an employer's general knowledge about the

statute's potential applicability, by itself, fails to demonstrate willfulness.'" *Derrick v. Metro. Gov't

of Nashville & Davidson Cty., Tenn.*, 2007 WL 4468673, *3 (M.D. Tenn. Dec. 17, 2007) (quoting

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988)).[6]

IPC argues that the record shows the *opposite* of a knowing or reckless violation of the

FMLA. IPC emphasizes Maher's admission that Dutrow with her and her union on several

occasions to discuss her absences, and that Dutrow even excused some of her absences. *See* 1st MSJ

at 7-8 (citing Maher Dep 88-89 and 115-119). IPC also points to Maher's admission that Dutrow

gave her extra time to submit documentation for the absences for which she had failed to submit

---

[6]

    *Accord Wilmath v. St. Joseph Mercy Health Ctr.*, 2009 WL 77616, *2 (W.D. Ark. Jan. 9,
2009) ("An employer's general knowledge of the statute is insufficient to prove willfulness.") (citing
*Hanger v. Lake Cty.*, 390 F.3d 579, 584 (8th Cir. 2004)).

such documentation.  *See* 1st MSJ at 8 (citing Maher Dep at 118).  Moreover, IPC stresses Maher's

admission that she had taken FMLA leave at IPC on several occasions with no problems or adverse

consequences.  *See* 1st MSJ at 8 (citing Maher Dep at 151-52).

IPC also relies on the fact that when Dutrow was determining whether to grant Maher's leave

requests, she researched websites and other resources to understand the FMLA's requirements, in

addition to meeting with Maher and her counsel – all signs of good-faith efforts to comply with the

FMLA, which efforts negate any finding of willfulness.  *See* 1st MSJ at 8 (citing *Hoffman*, 394 F.3d

at 419-20 (holding that employer's consultation with its attorney and with plaintiff tended to show

that the employer tried to meet its FMLA obligations).  If Dutrow made a mistake in denying

Maher's FMLA requests, IPC urges the court to view them as honest mistakes rather than willful

violations of the FMLA.  *See* 1st MSJ at 8-9.

Maher's opposition brief states, "It is really not necessary to discuss whether the defendants'

violations of the FMLA were 'willful,' thereby extending the statute of limitations to three years,

because Ms. Maher has not violated the two-year statute."  Maher's Opp at 22.  Maher goes on to

say only that

> Dutrow testified that she did not conduct any research or contact an attorney
> concerning whether her conduct in denying Ms. Maher protections under the FMLA
> and terminating her violated the FMLA (Dutrow dep., at pp 58-63).  She also
> testified that she did not recall even discussing with Ms. Maher why she was absent
> on March 10, 2006 when she spoke to her on March 16, 2006.  She also could not
> explain at all why she upheld the termination even after Ms. Maher explained her
> position in the grievance process.  (Dutrow dep., at pp 97-107).  This conduct
> suggests at least reckless disregard for Ms. Maher's FMLA rights.

Maher's Opp at 22.

IPC replies as follows:

The only facts upon which Plaintiff relies to establish a willful violation are the facts

that Defendant Dutrow (Plaintiff's Plant Manager) did not conduct any research or contact an attorney in denying Plaintiff's FMLA leave requests, and that Defendant Dutrow did not recall discussing with Plaintiff why Plaintiff was absent on March 10, 2006 or why she upheld Plaintiff's termination in the grievance process.  Such conduct, even if true, does not meet the "willful violation" standard.

Courts have held that an employer's erroneous belief that an employee is not entitled to FMLA leave, and absent knowledge that its conduct violates the FMLA, does not amount to a willful violation.  Plaintiff has failed to show any knowledge whatsoever on Defendant Dutrow's part that she knew or even thought her actions were contrary to the FMLA – nor does the record support such a showing.  There is simply no evidence that Dutrow knew Plaintiff was entitled to FMLA leave on the days in question but rejected Plaintiff's requests anyway.

In fact, Dutrow testified that she did not grant Plaintiff's September 28 and October 26, 2005 FMLA leave requests because she did *not* believe Plaintiff was entitled to FMLA leave under the circumstances, and that she researched the FMLA both on-line and vis-a-vis documentation available at the facility.  (Dutrow [Dep] 20-21, 59, 62)  Accordingly, even if Plaintiff were entitled to FMLA leave on the days in question, Dutrow's mistake would not constitute a willful violation.  *Lester v. Wayne County*, 2006 WL 1421372 (E.D. Mich.) (May 23, 2006). * * *

IPC's Reply at 8-9 (emphasis added, second ¶ break added, citation to brief omitted).

Finally, with leave of court, Maher filed a supplemental brief in opposition to the motion to dismiss on January 6, 2009.  Maher's supplemental brief did not address the issue of willfulness. Instead, **Maher's supplemental brief focuses entirely on a different argument which is foreclosed by adherence to *Ledbetter* reasoning:**

This court should be aware that the 6th Circuit has also ruled that where an employee does not suffer any actual adverse or harmful action (prejudice) as defined in the [FMLA], as a result of an employer's technical violation of the FMLA, the employee has no standing to sue under the FMLA . . . . [T]he defendants took no adverse action against Ms. Maher until March 17, 2006 [when it terminated her employment], and the statute of limitations did not begin to run until then.

In *Saroli v. Automation and Modular Components*, 405 F.3d 446, 455 (6th Cir. 2005) [*reh'g & reh'g en banc denied* (6th Cir. Sept. 28, 2005)], the court stated in pertinent part as follows:

* * *  In *Cavin*, 346 F.3d at 726, we found that "[e]ven when an

-18-

employee proves that his employer violated [section] 2615, [section] 2617 provides no relief unless the employee has been prejudiced by the violation. * * *

In the aforementioned *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713, 726-727 (6th Cir. 2003), the court explained that a termination based only in part on an absence covered under the FMLA, may, in combination with other absences, still violate the FMLA. The court then concluded that the defendant Honda's conclusion that three June absences were not FMLA qualifying leave arguably prejudiced the plaintiff Cavin several months later, when Honda took the June absences into account in its determination to terminate the plaintiff later that fall. So although the plaintiff Cavin suffered no injury or prejudice as a result of the June controversy in June, the plaintiff Cavin did suffer such prejudice later when the absences were taken into account at the time of termination.

Logically, because the prejudice from the June incidents occurred in the fall of that year, and § 2617 provides relief only as a result of prejudice, the statute would begin in the *Cavin* case in the fall, even though some of the technical violations of the FMLA had occurred earlier. Of course, *Cavin* did not involve a controversy over the statute of limitations, so the court technically did not address that issue.

But *Cavin*'s analysis is important to this case because, as in *Cavin*, Ms. Maher did not suffer prejudice as a result of the defendants' technical violations of the FMLA until she was terminated on March 17, 2006, when the defendants considered the September 28, 2005 and October 25, 2005 incidents along with the March 10, 2006 incident in their determination that Ms. Maher had exceeded the allowable points under the no fault attendance policy and therefore terminated Ms. Maher.

The statute of limitations, therefore, for the September 28, 2005, October 25, 2005, and March 7, 2006 incidents began to run on March 10, 2006, when Ms. Maher was terminated and she therefore actually suffered prejudice as a result of the defendants' earlier technical violations of the FMLA.

This analysis of, of course, consistent with the holding of *Healy* . . . (D Mass 2003) and *M[c]burney* . . . (8th Cir. 200[5]) cases cited in Plaintiff's Brief . . . 21.

Beyond that the analysis set forth above is consistent and harmonious with the language of § 2615 and § 2617 of the FMLA, it also makes good sense from a policy and judicial economy standpoint. The courts should not render decisions that have the effect o[f] encouraging or forcing employees who have suffered technical violations of their rights under the FMLA but no actual prejudice to their job, restoration to their job, or their benefits, from bringing wasteful actions in court just to preserve their rights just in case in the future an employer may take an adverse action taking in part into consideration the earlier disagreement over the application

-19-

of the FMLA.

> The federal courts should not be turned into an adjunct human resources department for employers that micromanages the assessment [of] points against employees under employers' attendance policies. This would unnecessarily clog the courts with controversies over merely technical disagreements over application of the FMLA that may only theoretically prejudice or harm the employee in the future.

Maher's Supp Opp at 1-3 (¶ breaks added). Even if Maher's public-policy and judicial-economy arguments are logical, that is no basis for refusing to apply the Supreme Court's *Ledbetter* reasoning as to the time when each of her FMLA claims accrued. The United States Supreme Court determined that *Ledbetter*'s accrual rule is sensible in the Title VII context, our Circuit and other courts have applied it in the ADA context, and Maher identifies *no* court decision that declines to apply *Ledbetter* in the FMLA context on the ground that the text or purpose of Title VII and FMLA are materially different and distinguishable on this basis.


## DISCUSSION
### If Not Time-Barred, Do Maher's Claims Present a Genuine Issue of Material Fact?

FMLA Theories of Recovery. Two of FMLA's three available theories of recovery are potentially applicable here. A plaintiff may establish an FMLA violation through an entitlement/interference theory under 29 U.S.C. § 2615(a)(1)[7] or a discrimination/retaliation theory under 29 U.S.C. § 2615(a)(2).[8] *See Alexander v. Atlantic Auto. Components*, 2008 WL 4283520,

---

[7]

Title 29 U.S.C. § 2615(a)(1) provides, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

[8]

Title 29 U.S.C. § 2615(a)(2) provides, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

*16 (W.D. Mich. Sept. 16, 2008) (Maloney, C.J.) (citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) and *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006)).[9]

FMLA Interference Claim.  To prevail on a claim under the entitlement/interference theory, Maher must show that (1) she is an eligible employee, (2) IPC is an employer as that term is defined by the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave IPC notice of her intention to take leave, and (5) IPC denied her FMLA benefits to which she was entitled. *Alexander*, 2008 WL 4283520 at *16 (citing *Killian*, 454 F.3d at 556 and *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).  An employee is terminated after taking FMLA leave has been "denied benefits" because she has not been restored to her former position or an equivalent one. *Alexander*, 2008 WL 4283520 at * 16 (citing *Killian*, 454 F.3d at 556); *see* 29 U.S.C. § 1614(a)(1) (an employee who takes leave under the FMLA is entitled to be restored to the same position or an equivalent position upon returning to work).

FMLA Discrimination / Retaliation Claim.  To prevail on an FMLA retaliation claim, Maher must demonstrate that (1) she was engaged in an activity protected by the FMLA, (2) IPC knew that she was exercising her rights under the FMLA, (3) after learning of Maher's exercise of her FMLA rights, IPC took an adverse action against her, and (4) there was a causal connection between the FMLA-protected activity and the adverse employment action.  *Alexander*, 2008 WL 4283520  at * 16 (citing *Killian*, 454 F.3d at 556).  To establish a causal connection in the context of a *prima facie* case to survive summary judgment, Maher must put forth "some evidence" that would permit

---

[9]

The third FMLA theory of recovery, not applicable here, is retaliation against an employee for filing an FMLA charge, giving or planning to give information in an FMLA-related inquiry or proceeding, or testifying or offering to testify in such a proceeding. *See Allen v. City of Sturgis*, 559 F. Supp.2d 837, 844 n.3 (W.D. Mich. 2008) (Maloney, J.) (quoting 29 U.S.C. § 2615(b)).

the court to infer a causal connection between her protected activity and her termination. *Alexander*, 2008 WL 4283520 at * 16 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).  Because Maher is relying on indirect and circumstantial evidence rather than direct evidence, the *McDonnell-Douglas* burden-shifting framework applies.  *Alexander*, 2008 WL 4283520 at * 16 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)).

Maher has testified that the basis for her interference claim is Dutrow's refusal to provide her with FMLA paperwork for the first of the three contested absences (September 28, 2005), *see* Maher Dep 80, 82 and 160.

Maher also testified that the basis for her discrimination claim is her termination, *see* Maher Dep at 27, 78-79, 96, 159 and 161, and the parties agree that IPC's stated reason for that termination was her unexcused absences on September 28 and October 26, 2005 and March 10, 2006.

IPC's first motion sought to dismiss, or obtain summary judgment on, Maher's claims solely on the ground that they are time-barred.  The first motion does not seek dismissal or summary judgment on the ground that the claims, if timely, lack merit.  Accordingly, the court will not *sua sponte* investigate whether Maher's claims may have merit.  That will be the subject of a later opinion ruling on IPC's not-yet-ripe second summary-judgment motion.

## ORDER

The defendants' first motion to dismiss or for summary judgment [doc. # 22] is **DENIED.**

The court **DETERMINES** that there is a genuine issue of material fact as to whether the

defendants' alleged violations of the FMLA were willful.[10]

**The court HOLDS that:**

(1a)    **if a jury finds that the defendants willfully violated the FMLA**, the plaintiff's

claim will be governed by 29 U.S.C. § 2617(c)(2), which provides that such FMLA

claims must be brought "within 3 years of the date of the last event constituting the

alleged violation for which the action is brought."

(1b)    In that case, all of plaintiff's FMLA claims will be timely.

(2a)    **if a jury finds that the defendants violated the FMLA but did not do so willfully**,

the plaintiff's claim will be governed by 29 U.S.C. § 2617(c)(1), which provides that

such FMLA claims must be brought "not later than 2 years after the date of the last

event constituting the alleged violation for which the action is brought."

(2b)    If so, plaintiff's claims regarding her March 10, 2006 absenteeism assessment and

March 17, 2006 termination will be timely, and her other claims will be untimely.

(3)    **if a jury finds that the defendants did not violate the FMLA at all**, the court will

dismiss the plaintiff's claims with prejudice.

This is not a final order. *A & F Ins. Co., Inc. v. Sequatchie Concrete Servs., Inc.,* 441 F.3d

341, 344 (6th Cir. 2006) ("The denial of summary judgment is ordinarily considered an interlocutory

_____

[10]The court intimates no opinion as to whether the defendants violated the FMLA at all.

order and thus not appealable.") (citing *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002)).[11] [12] [13]

   **IT IS SO ORDERED this 5th day of March 2009.**


                                        /s/ Paul L. Maloney
                                        Honorable Paul L. Maloney
                                        Chief United States District Judge

---

[11]

   There is an exception that is not applicable here.  When a party moves for summary judgment on the ground of official immunity and the district court denies the motion, the denial is sometimes immediately appealable.  *See Marvin v. City of Taylor*, 509 F.3d 234, 237 (6th Cir. 2007) (citation omitted), *reh'g en banc denied* (6th Cir. Mar. 28, 2008).

[12]

   If a verdict is rendered for the plaintiffs after trial, the defendants may *never* be able to appeal this order.  *See Service Source, Inc. v. Office Depot, Inc.*, 259 F. App'x 768, 772 (6th Cir. 2008) (McKeague, J.) ("'[w]here summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed.'") (quoting *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990)) (other citation omitted).  But there may be an exception, allowing appellate review of a denial of summary judgment based purely on a question of law, even when the question does not concern official immunity.  *FHC, Inc. v. Village of Olde St. Andrews*, 210 F. App'x 469, 472 (6th Cir. 2006) ("[A] movant can appeal the denial of summary judgment even after losing a trial on the merits where the issue on appeal is purely one of law, such as governmental immunity.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)), *cert. denied sub nom. WKB Assocs., Inc. v. FHC, Inc.*, – U.S. –, 128 S.Ct. 880 (2008).

[13]

   In any event, because she failed to assert the textual difference between Title VII and the FMLA until oral argument, Maher may never have the right to appeal that issue, even when there is a final order.  *See In re Corio*, 2009 WL 78157, *4 (D.N.J. Jan. 9, 2009) ("raising an issue for the first time at oral argument d[oes] not preserve the issue for appellate review") (citation omitted).

-24-